**DAVID & DAVID, INC., Plaintiff-Appellant,**

v.

**Ralph MYERSON, Defendant-Appellee.**

**No. 156, Docket 30960.**

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1967.

Decided Jan. 9, 1968.

David B. Kirschstein, New York City (Kirschstein, Kirschstein & Ottinger, New York City, Bailin L. Kuch and Harry Cohen, New York City, on the brief), for plaintiff-appellant.

Ralph Myerson, pro se.

Before LUMBARD, Chief Judge, MEDINA and HAYS, Circuit Judges.

MEDINA, Circuit Judge.

■ David & David, Inc. appeals from a decision of the United States District Court for the Eastern District of New York, Dooling, J., which held appellant's patent on an "apparatus for curling plastic yarn" invalid under 35 U.S.C. Section 103[1] because the subject matter was obvious in view of the prior art. Appellant had initially sued Ralph Myerson for infringement of its patent. Defendant, while denying infringement also sought to have the patent invalidated and charged plaintiff with patent abuse, unfair competition and violation of the antitrust laws. Although Judge Dooling determined that defendant was guilty of infringement, his finding of obviousness necessarily dictated dismissal of the complaint. Defendant's counter-claims were similarly dismissed on the merits and they are not before us on this appeal. Thus we are concerned only with the issue of the validity of the patent.

Plaintiff's patented apparatus provides a means of continuously curling plastic yarn to be employed as hair on a doll's head. The apparatus consists of five basic elements—a horizontal rotary shaft, a spinning member, a tapered member, a tapered mandrel and a transverse member. The spinning member is mounted on the horizontal shaft and rotates with the shaft, which is driven by an electric pulley. A tapered member is secured to the end of the horizontal shaft remote from the pulley by means of a bearing and a tapered mandrel is attached to the end of the tapered member. All of the above elements are horizontally disposed. A transverse member is non-rotatably se-cured to the free end of the mandrel and is perpendicular to the rest of the machine. Yarn is fed through the horizontal shaft and emerges from an opening in the spinning member. Since both the tapered member and the tapered mandrel do not rotate because of the inertia caused by the transverse member, the yarn as it emerges from the spinning member is whirled about the surface of the tapered member and forms into curls at the intersection of the mandrel and the tapered member. Each curl as it is formed pushes the previous curl along the mandrel and ultimately down the transverse member where it can be stored.

Defendant, in seeking to invalidate plaintiff's patent, relied upon three prior art patents in the court below—Faris, No. 2,475,019 (1949),[2] Rhodes, No. 2,432,935 (1947), and Whittum, No. 2,700,514 (1955)—none of which had been cited by the Patent Office during the prosecution of plaintiff's patent. Judge Dooling found that while Faris and Rhodes do not completely anticipate plaintiff's patent "they leave nothing to plaintiff's patentees that is patentable." We agree with this conclusion and with the reasoning of Judge Dooling's excellent opinion, D.C., 277 F.Supp. 973. Both Faris which embodies a process for making pile yarns and fabrics, and Rhodes which involves an apparatus for making coiled yarn, disclose the concept, as found by Judge Dooling, of a "self-feeding, self-progressing curl forming process achieved through use of a spinning feed to a stationary tapered mandrel." Furthermore, we believe plaintiff has overemphasized the importance of the dual-function transverse member. This element is merely a vertical segment at-

[1] "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

[2] Plaintiff has claimed that Faris is an unworkable patent. However, even an unworkable patent is a part of the prior art. See Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F 2d 263, 267 (2 Cir. 1967).

tached to the end of the mandrel which prevents the mandrel and tapered member from rotating. Undoubtedly it would be "obvious to a hypothetical mechanic who * * * has the prior art in mind." Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 538 (2 Cir. 1966).[3]

Whether the use of a hollow rotary shaft and angled tube to transport the yarn is obvious under the prior art is a more complex question. Faris partially discloses the above procedure as it requires that some yarn be fed through a horizontal cone and later onto a stationary mandrel. However, unlike plaintiff's patent, this particular feed is not eccentric. The other yarn used in the Faris patent is fed eccentrically but does not pass through a horizontal cone and simply emerges in loops from a roll of yarn. It would seem fairly obvious that the hypothetical mechanic could devise the transport means employed in the present patent simply by incorporating the various features of Faris. Furthermore, Whittum, as conceded by plaintiff, discloses a hollow rotatable shaft through which wire is eventually led to an eccentric feed. Even though Whittum involves the coiling of steel wire, this does not necessarily remove it from the relevant prior art, though its persuasiveness on the question of obviousness may be somewhat reduced. See Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 268 (2 Cir. 1967). Consequently, we believe that in light of Faris and Whittum, plaintiff's means of yarn transport must be considered obvious to a person skilled in the art.

Finally, the fact that neither Rhodes, Faris nor Whittum was cited in the Patent Office should not alter a finding of invalidity if obviousness is established. Uncited patents have previously formed the basis for determina-

tions of invalidity, see Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965), and the general test is an objective one, as the patent holder must be deemed to possess all the available knowledge in the applicable art. See Graham v. John Deere Co., 383 U.S. 1, 36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 538 (2 Cir. 1966); Walker v. General Motors Corp., 362 F.2d 56, 60 (9 Cir. 1966).

Affirmed.

---

3. Rhodes consists of an apparatus that is vertically disposed. At the top of the machine is a tapered needle about which yarn is coiled. The needle, though initially vertical in position, is laterally bent to wind the yarn. The patent contem-

plated that the lateral portion of the needle could be "varied within a wide range." It is indeed a small step between the apparatus in Rhodes and the transverse member in the present patent.